UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


LAUREL BEGLEY, individually and on behalf of
all others similarly situated,

               Plaintiff,                              Case No. 3:21-cv-01031-YY

      v.                                      OPINION AND ORDER

JK ENTERPRISE INCORPORATED dba
CABARET II, an Oregon Corporation; JOSEPHINE
JABRA KIRAZ, an individual; and DOES 1 through
10, INCLUSIVE,

               Defendants.


YOU, Magistrate Judge.

       Plaintiff Laurel Begley brings this putative collective action against defendants JK

Enterprise Incorporated dba Cabaret II, Josephine Jabra Kiraz, and Does 1-10 (collectively

"defendants"). Compl., ECF 1. The Complaint describes the collective action members as "all

current and former exotic dancers who worked at the Cabaret II . . . at any time starting three (3)

years before this Complaint was filed, up to the present." *Id.* ¶ 10. The Complaint alleges four

violations of the Fair Labor Standards Act ("FLSA"): failure to pay minimum wages (29 U.S.C.

§ 206), requiring illegal kickbacks (29 C.F.R. § 531.35), unlawfully taking tips (29 U.S.C. §

203), and forced tip sharing (29 C.F.R. § 531.35). *See generally id*. This court has federal question jurisdiction over these claims. *See* 28 U.S.C. § 1331.

Plaintiff has moved for (1) conditional certification under 29 U.S.C. § 216(b), and (2) approval of a notice to putative collective action members. Mot., ECF 17. For the reasons discussed below, the court GRANTS plaintiff's motion for conditional certification. However, the court DENIES the implementation of plaintiff's proposed order (ECF 17-4) and use of the proposed notice (Marin Decl., ECF 17-3) and instead directs the parties to confer and finalize a notice and proposed order that is (1) in accordance with this opinion and (2) distributed by a mutually agreed-upon third-party claims administrator.[1]

In her motion, plaintiff also seeks equitable tolling of the FLSA's statute of limitations. Mot., ECF 17. Because the request for equitable tolling is a dispositive motion, it is addressed in separate findings and recommendations. *See, e.g., Reddy v. Morrissey*, No. 3:18-CV-00938-YY, 2018 WL 4407248, at *1 n.1 (D. Or. Sept. 17, 2018) (citing cases).

---

[1] There is a general split of authority as to whether granting a motion for conditional certification is a motion that is solely within a magistrate judge's authority. "The weight of authority . . . conclude[es] that granting a motion for conditional certification is a nondispositive matter within a magistrate judge's authority to resolve." *Lescinsky v. Clark Cty. Sch. Dist*., 539 F. Supp. 3d 1121, 1125 (D. Nev. 2021); *see also Geller v. Bowers*, No. CV 11-874, , at *1 n.1 (N.D. Cal. Apr. 13, 2012) (noting because they seek a preliminary determination, motions for conditional certification may be decided by a magistrate judge); *Bittencourt v. Ferrara Bakery & Café Inc*., 310 F.R.D. 106, 110 n.1 (S.D.N.Y. 2015) ("A United States [M]agistrate Judge has the authority to rule on a motion to authorize a collective action."); *Esparza v. C & J Energy Servs. Inc*., No. 5:15-CV-850, 2016 WL 1737147, at *1 (W.D. Tex. May 2, 2016) ("A motion for conditional class certification is nondispositive."); *Dimery v. Universal Prot. Serv., LLC*, No. 6:15-cv-2064, 2016 WL 7666136, at *1 n.1 (M.D. Fla. Mar. 24, 2016) ("[A] motion for conditional certification under the Fair Labor Standards Act is a non-dispositive matter, and therefore appropriate for a magistrate to decide under 28 U.S.C. § 636(b)(1)(A)."). The court aligns with the "weight of authority" and accordingly issues this decision as an opinion and order.

## I.    Background Facts

Defendants are the current operators of Cabaret II, a club located in Portland, Oregon. Begley Decl. ¶ 2-3, ECF 17-1.  Plaintiff performed at defendants' club, Cabaret II, from approximately March 2019 to January 2020.  *Id.* ¶ 3.

Plaintiff alleges defendants employed her and all other dancers at Cabaret II as independent contractors.  *Id.* ¶ 7.  Defendants allegedly exercised a great deal of control over the dancers' performances, setting a work schedule and requiring dancers to perform a certain number of weekdays to be allowed to perform at the club on weekends.  *Id.* ¶¶ 14-15.  Plaintiff and her fellow dancers were required to perform stage dances as part of their work at the club. *Id.* ¶ 16.  Defendants also required dancers to complete their entire shift on their scheduled work days; performers who wished to leave early were required to ask a manager for permission to do so, and were subject to discipline by club management.  *Id.* ¶¶ 16-17.

In addition to enforcing these performance-related requirements, defendants set a variety of procedures surrounding tipping and other fees.  Defendants charged all dancers a stage fee to perform a shift.  *Id.* ¶ 9.  Defendants also set prices for standard lap dances and VIP dances, and retained a portion of the money that dancers received for performing.  *Id.* ¶ 10-11.  Lastly, defendants expected dancers to "tip out other employees[,] including DJs, bouncers, and bar staff."  *Id.* ¶ 12.

## II.    Conditional Certification

### A.    Legal Standard

The FLSA provides for a private right of action to enforce its provisions "by any one or more employees [on] behalf of [] themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term

'similarly situated.'" *Millan v. Cascade Water Servs., Inc*., 310 F.R.D. 593, 607 (E.D. Cal. 2015). However, a majority of courts have adopted a two-step approach to evaluate whether potential plaintiffs are similarly situated. *Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon*, No. 3:13-CV-00475-PK, 2013 WL 5593040, at *15 (D. Or. Oct. 10, 2013)*; Gessele v. Jack in the Box, Inc*., No. 3:10–cv–00960–ST, 2013 WL 1326538, at *3-*4 (D. Or. Apr. 1, 2013); *see also Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1105 (10th Cir. 2001) (concluding that the district court did not err in adopting the two-step approach).

At this juncture, is it necessary to discuss only the first step, which requires the court to make an "initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'"[2] *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp*., 175 F.R.D. 672, 678 (D. Colo. 1997)). This analysis involves "'nothing more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan.'" *Id*. (quoting *Bayles v. Am. Med. Response of Colo., Inc*., 950 F. Supp. 1053, 1066 (D. Colo. 1996)). Accordingly, cases in this district have characterized this inquiry as a "less stringent standard than the requirements for certification under Rule 23" and "typically results in certification." *Dickerson v. Cable Commc'ns, Inc*., No. 3:12–CV–00012–PK, 2013 WL 6178460, at *2 n.5 (D. Or. Nov. 25, 2013); *Margulies*, 2013 WL 5593040, at *15.

---

[2] The second step of an FLSA collective certification, which is not implicated in this motion, typically occurs after the completion of discovery, when defendants often move to decertify the collective action. *Leuthold v. Destination Am., Inc*., 224 F.R.D. 462, 467 (N.D. Cal. 2004). At the second step, a court evaluates "several factors, including the specific employment conditions and duties of the individual plaintiffs, any defenses asserted by or available to the defendant which appear to be individual to each plaintiff, fairness and procedural considerations, and whether the plaintiffs made any required filings before instituting suit." *Morden v. T—Mobile USA, Inc*., No. C05-2112RSM, 2006 WL 2620320, at *2 (W.D. Wash. Sept.12, 2006) (citing *Thiessen*, 267 F.3d at 1103).

B.    **Analysis**

Defendants claim that plaintiff has failed to demonstrate that she and other potential plaintiffs are similarly situated.  They offer two specific points behind this assertion: first, that the submitted declarations cannot be authenticated because they contain "generic, cookie-cutter statements" that are not "tailored to the realities of this case," and second, that in any event, the "common practices" that plaintiff alleges do not apply to all dancers.  Opp. 2, ECF 18.

While there is some basis for defendants' arguments, they do not dislodge a reasonable inference, formed from the allegations in plaintiff's complaint and declarations, that defendants potentially violated the FLSA.  Defendants first contend that plaintiff's allegations and declarations are inauthentic because they "rely on generalizations about the dancers' industry" and "appear copied and pasted" from other FLSA actions before this court.  *Id.* at 1-3.  Although the court does not condone the alleged "recycling" of boilerplate declarations, two points are important: (1) declarations are sworn testimony, and (2) the first step only requires "a common legal theory upon which each member is entitled to relief" and does not "encompass an in-depth fact specific inquiry."  *White v. Rakhra Mushroom Farm Corp.*, No. CV 08-198-SU, 2009 WL 971857, at *4 (D. Or. Apr. 8, 2009) (quoting *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002)); *see also Goudie v. Cable Commc'ns, Inc.,* No. 08-CV-507-AC, 2008 WL 4628394, at *6 (D. Or. Oct. 14, 2008) (granting conditional certification despite the absence of declarations or any other evidence).  Plaintiff has alleged enough, at this early stage, to create a reasonable inference of a potential FLSA violation.

Second, defendants argue that the "common practices" described in plaintiff's declaration were not "actual venue polic[ies] or practice[s]."  Opp. 3, ECF 18.  In support of this claim, defendants point to the declaration of David Kiraz, a manager at Cabaret II, which offers facts

that contradict plaintiff's characterization of the club's practices.  *See generally* Kiraz Decl. ¶¶ 3-12, ECF 20.  While the court does look to "pleadings and affidavits submitted by the parties," it does not address the merits of a plaintiff's claim at the first stage of the two-prong FLSA certification test.  *Goudie*, 2008 WL 4628394, at *5 (citation and quotation marks omitted).  In other words, a factual dispute over whether there actually existed "common practices" at Cabaret II that applied to all performers does not justify denying conditional certification; instead, resolving that dispute is best suited for the second-step of the analysis after the close of discovery.

Thus, plaintiff has satisfied her "minimal burden" of showing that performers who are either current performers at Cabaret II or performed between July 2018 and July 2021 are similarly situated to the named plaintiff.  Accordingly, the court grants plaintiff's motion for conditional certification of the FLSA collective action.

## III.    Proposed Notice

Plaintiff has also submitted a proposed notice and a proposed order outlining the dissemination of the proposed notice to putative members.  *See* Proposed Notice, Ex. 1, ECF 17-3; Proposed Order, ECF 17-4.  Defendants challenge the proposed notice and proposed order on six grounds: (1) the methods of notifying putative members, (2) the areas where notice should be posted, (3) the length of the opt-in period, (4) the request for a reminder sent to unresponsive performers, (5) the content of the message itself, and (6) access to the private information of potential members.  *See* Opp. 5-20, ECF 18.  The court addresses each challenge in turn.

### A.    Methods of Notifying Putative Members

Plaintiff proposes that notice of and forms to opt into the putative collective action be sent "via email, text message, as well as U.S. Mail."  Proposed Order 1, ECF 17-4.  Defendants

argue that "without circumstances to warrant otherwise, one [form of] notice is enough," and particularly object to plaintiff's proposed texting of putative members. Opp. 6, ECF 18 (quoting *Green v. Grand Villa of St. Petersburg*, No. 8:15-CV-1973-T-30, 2015 WL 7777537, at *4 (M.D. Fla. Dec. 3, 2015)). In response, plaintiff offers a variety of cases demonstrating that "[n]umerous district courts have sanctioned notice to potential FLSA opt[-]in plaintiffs via U.S. mail, email, and text message." Reply 5, ECF 24.

As a general rule, putative members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). There are two problems with defendants' suggestion that plaintiff be limited to one form (U.S. mail) of notification. First, all the cases that defendants cite in support of this proposition originate from the Middle District of Florida; that principle appears to be a minority view when compared to the cases offered by plaintiff. *See* Reply 5, ECF 24 (collecting FLSA cases from the Eastern, Northern, and Central Districts of California, the Southern District of New York, the Southern District of Florida, and the District of Massachusetts). Second, even if this court adopted the Middle District of Florida's standard, the putative members arguably have an important characteristic that warrants deviation from the general rule. As plaintiff notes, dancers "regularly move [physical] addresses," diminishing the effectiveness of notices that are only delivered via physical mail. *Id.* These two points caution against allowing plaintiff to only send notices via U.S. mail, and the court will not do so here.

That said, defendants have raised significant issues concerning the use of text messages to notify putative members of this action. As defendants point out, courts in a variety of districts have declined to require notice via text message for reasons such as the intrusive nature of

unsolicited text messages and potential costs for individuals who receive a lengthy text message while holding a limited phone coverage plan. *See* Opp. 6-8, ECF 18 (collecting cases from the Middle District of Florida, Western District of Washington, Northern District of Alabama, Northern District of Georgia, and Central District of California). Plaintiff's response—that "email addresses and phone numbers are not so regularly changed" when compared against physical addresses—does not undercut the serious concerns that defendants posit involving *text messages*. Reply 5, ECF 24. Thus, the court finds that while notice via U.S. mail and email are appropriate, issuing notice via text message is unwarranted due to concerns involving privacy, formality, and a performer's financial status.

The court recognizes, however, that the performers may not have provided their email addresses to defendants. If that is the case, plaintiff can bring this matter back to the court for reconsideration.

### B. Locations of Required Posting

Plaintiff also proposes that defendants post the notice and consent form on their social media accounts "weekly" and at Cabaret II, "in conspicuous colors on a laminated board at least three (3) by five (5) feet in the dressing rooms . . . and the entrance for the majority of the dancers." Proposed Order 1, ECF 17-4. Defendants object to this, arguing that any public posting imposes "considerable prejudice" and does not "inform potential collective members any more than the targeted notices traditionally approved." Opp. 8, ECF 18. Additionally, defendants take particular issue with being required to hang posters of the size that plaintiff requests. *Id.* at 9.

Generally speaking, "posting or publication are appropriate methods for providing notice when individual methods of service are unsuccessful or likely to be inadequate." *Pittman v.*

*Westgate Planet Hollywood Las Vegas, LLC*, No. 209CV00878PMPGWF, 2009 WL 10693400, at *10 (D. Nev. Sept. 1, 2009). Plaintiff argues "[i]t is important that dancers receive this notice and that [d]efendants not intimidate their dancers or hide from them the existence of the present action." Reply 6, ECF 24. But she fails to demonstrate how publishing information about the collective action on social media or at a public entrance would facilitate notice any more than the targeted U.S. mail and email messages approved above. If, for example, plaintiff hopes to reach dancers who no longer perform at the club, there is no indication that information posted at Cabaret II—whether outside a club entrance or inside a dressing room—would increase that probability. Requiring defendants to post on their social media, meanwhile, would not only unfairly prejudice the business,[3] but also distribute the notice to persons who are not putative members—likely creating confusion and increasing the possibility that ineligible persons may seek to opt in. *Pittman*, 2009 WL 10693400, at *10. Thus, the court will not require defendants to post notice of this collective action on defendants' social media or outside any public entrance.

The court does, however, recognize the potential benefit of posting notice of this action in the performers' dressing rooms. That private location balances plaintiff's aim to reach as many potential members as possible with the business's desire to be free from unfair prejudice during the pendency of this action. However, it is unnecessary and excessive to require that defendants put up a notice "in conspicuous colors on a laminated board at least three (3) by five (5) feet in the dressing rooms." Proposed Order 1, ECF 17-4. Instead, in each dressing room, defendants

___

[3] Requiring defendants to post notice of the collective action in public spaces may "give the impression that that the as-yet unproven allegations against Defendants are true." *Pittman*, 2009 WL 10693400, at *10 (citing *Owen v. W. Travel, Inc.*, No. C03-0659Z, 2003 WL 25961848, at *10 (W.D. Wash. Dec. 12, 2003)).

shall post notice of the collective action in accordance with the FLSA's guidelines surrounding

copies of federal and state-mandated workplace posters.  Those requirements are:

> Reproductions or facsimiles of such Federal or State posters shall constitute
> compliance with the posting requirements of section 8(c)(1) of the Act where such
> reproductions or facsimiles are at least 8½ inches by 14 inches, and the printing
> size is at least 10 pt. Whenever the size of the poster increases, the size of the
> print shall also increase accordingly. The caption or heading on the poster shall be
> in large type, generally not less than 36 pt.

29 C.F.R. § 1903.2(a)(3).

Plaintiffs posit that "[o]ther district courts have allowed notice [of a collective action] to

be issued in a . . . dressing room, website, and entrances."  Reply 6, ECF 24.  Yet the cases that

plaintiff offers for this proposition are not exactly a paragon of persuasiveness.  The first three

cases that plaintiff lists—*Aguilar*, *Rice*, and *Mora*—involved notices that were either unopposed

or unchallenged by each respective defendant.  *See* Marin Decl., Ex. 3, at 3-4, ECF 17-3 (the

*Aguiar* court noting that conditional certification was "unopposed"); Marin Decl., Ex. 4, at 1,

ECF 17-3 (the *Rice* court noting that "defendants did not respond to the motion"); Marin Decl.,

Ex. 7, at 1, ECF 17-3 (minutes in *Mora* reflecting that defendants "do not oppose Plaintiff's

motion").  And the defendant in the fourth case, *Truehart*, failed to offer any explanation or

authority to support its request that the notice should not be posted online or at a public entrance.

*See* Opp. 6, ECF 28, *Truehart et al. v. Dartmouth Clubs, Inc. et al.*, 1:20-CV-10374-DJC (D.

Mass. June 1, 2020).  While plaintiff is correct in stating that each of the four respective courts

"allowed notice to be issued in . . . a dressing room, website, and entrances," the placement of

the notice was not significantly disputed in any of those cases.  Reply 6, ECF 24.

In sum, the court refrains from requiring defendants to publish notice of this collective

action on its social media or outside any public entrance to Cabaret II.  Defendants are ordered,

however, to post notice of the collective action in each of the dressing rooms at Cabaret II using

paper and fonts that are compliant with the FLSA's guidelines for federal and state-mandated workplace posters.

### C.    Length of the Opt-In Period

Plaintiff seeks a 90-day period for potential members to opt into the putative collective action.  Proposed Order 1, ECF 17-4.  Defendants argue that a 60-day period is appropriate for striking a "balance between access to the lawsuit and judicial efficiency."  Opp. 10, ECF 18.  In setting the length of an opt-in period, the court must balance both "the goal of avoiding a multiplicity of duplicative suits" and "setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche Inc*, 493 U.S. at 172.

Defendants argue that opt-in periods of 90 days or longer are only warranted for "special circumstances," such as "an exceedingly large number of potential plaintiffs or a large geographic disbursement."  Opp. 10, ECF 18.  But, as plaintiff notes, such a "special circumstance" may exist for the putative members here.  Reply 6-7, ECF 24.  By the nature of their profession, dancers may "regularly move [physical addresses]," and a longer opt-in period of 90 days would better facilitate the ability of such individuals to receive notice and join the putative collective action.  *Id.* at 5.  And while defendants suggest that the "high number of strip clubs per capita" in the Portland area makes it unlikely that performers would move away, *see* Opp. 11 n.6, ECF 18, that fact does not have any bearing on the possibility of performers moving around and within the local area.

Defendants also proffer cases where other courts have ordered a 60-day period in response to a plaintiff's request for an opt-in period of 90-days.  Opp. 11, ECF 18.  But the cited cases involve professions such as financial services professionals, video game administrators, and airline security guards—professions that bear little relationship to a putative collective action

involving the performers in this case.  Plaintiff, on the other hand, has offered on-point cases where courts have allowed a 90-day opt-in period for putative collective actions involving similar performers.  *See* Reply 6, ECF 24.  Thus, plaintiff's request for a 90-day opt-in period is granted.

### D.    Use of Reminders

Plaintiff also seeks authorization for "mail, email, and text reminders to all dancers who have not [] opted in[] within 30 days of the first notice."  Proposed Order 1, ECF 17-4.  Defendants argue that reminder notices are not only unnecessary, but also "risk pressuring individuals into joining, and suggest that the Court endorses or even expects them to join" the collective action.  Opp. 12, ECF 18.

While the court acknowledges defendants' concerns, it also recognizes the utility of reminding individuals of their right to join the collective action.  Additionally, "many courts [] have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in."  *Bakhtiar v. Info. Res., Inc*., No. 17-CV-04559-JST, 2018 WL 3585057, at *4 (N.D. Cal. July 26, 2018) (quotation marks omitted); *see also Sanchez v. Sephora USA, Inc*., No. 11-03396 SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012); *Gee v. Suntrust Mortg., Inc*., No. C-10-1509-RS, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011); *Harris v. Vector Mktg. Corp*., 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010).  The court therefore finds it appropriate to allow the issuance of one reminder notice, via the approved methods for contacting potential collective members (email and U.S. mail), to performers who do not respond to the initial notice.

E.    **Content of Message**

Defendants object to several aspects of the content of plaintiff's proposed notice. Specifically, they argue that the proposed notice (1) fails to disclose the potential of an adverse ruling, (2) does not advise potential members of the possibility of fees, (3) omits any reference to the potential of decertification, (4) discusses claims far more than defenses, and (5) improperly implies the court's endorsement of the plaintiff's position.  Opp. 13-19, ECF 18.  Plaintiff opposes defendants' proposed revisions, and broadly suggests that defendants are trying to incorporate non-neutral language to prevent putative members from joining the collective action. Reply 7, ECF 24.

First, defendants request that the notice advise opt-in plaintiffs of the potential of an unfavorable ruling in the collective action.  Opp. 13, ECF 18.  They specifically seek the following revisions:

> Plaintiff's Proposed Language: "If you do participate in this case, you will be bound by any ruling by the court or settlement reached by the parties."
>
> Suggested Change: "If you do participate in this case, you will share in the benefits if there is a settlement or judgment, and you will also be bound by any favorable or adverse decisions or rulings in the case."
>
> Plaintiff's Proposed Language: If you do not return the enclosed consent form by [DATE], 2021, you may not be considered part of this case and may not be able to receive a share of any settlement or judgment that the plaintiff may obtain under the federal claims in this case."
>
> Suggested Change: "If you do not return the enclosed consent form by [DATE], 2021, you will not receive any money or other benefits if there is a settlement or judgment, and you will not be covered by any favorable or adverse decisions or rulings in the case."

*Id.* (emphasis omitted)*.*   Plaintiff did not offer a specific objection to this request, instead casting all of defendants' proposed edits as an attempt to "intimidate potential collective members from joining."  Reply 7, ECF 24.  But as defendants note, the suggested language is borrowed from a

decision from another case in this district: *Chastain v. Cam*, No. 3:13-CV-01802-SI, 2014 WL 3734368, at *9 (D. Or. July 28, 2014). The *Chastain* court found that this text appropriately reflected a need to "provide sufficient notice [to potential members] that there will not necessarily be a favorable ruling in the case," and authorized its use. Thus, the court orders that plaintiff uses the revised text as it relates to defendants' proposed language in this section.

Second, defendants argue that the absence of any text describing the potential for collective action members to be responsible for litigation fees inappropriately keeps the performers "in the dark." Plaintiff disagrees with defendants' characterization and provides cases where requests to add language about potential counterclaims were rejected. Reply 7, ECF 24. As an initial matter, plaintiff's cases are not quite on point: recovery of attorney's fees and costs under the FLSA is not a *counterclaim* but rather an *award* permitted by the statute's text. *See* 29 U.S.C. § 216(b). However, the FLSA's statutory text only provides for such an award to prevailing *plaintiffs*, not necessarily prevailing defendants. *Id.*; *see also Chastain*, 2014 WL 3734368, at *9. And while Federal Rule of Civil Procedure 54(d) allows prevailing parties to recover certain litigation costs, the availability and framework of any award are subject to the court's discretion. Given the uncertain nature of such an award, and the risk that such a notice could discourage a potential plaintiff from opting in, defendants' request for language describing the possibility of litigation fees is denied.

Third, defendants argue that the proposed notice "hides the potential for decertification." Opp. 16, ECF 18. To be sure, decertification of the collective action (and removal of members who opted in) is a possibility: the second step of an FLSA certification requires the court to evaluate "several factors, including the specific employment conditions and duties of the individual plaintiffs." *Morden v. T—Mobile USA, Inc*., 2006 WL 2620320, at *2 (W.D. Wash.

Sept. 12, 2006). But decertification itself is an "adverse ruling" against a potential plaintiff; the court is otherwise requiring plaintiff to include language notifying performers that they would "be bound by any favorable or adverse decisions or rulings in the case." *Ante* at 13 (quoting Opp. 13, ECF 18). Thus, additional information warning of the specific possibility of decertification is unnecessary.

Fourth, defendants claim that plaintiff's proposed notice "devot[es] more discussion to claims than defenses," and remarks that "the parties' positions deserve equal explanation and prominence." Opp. 16, ECF 18. As a general principle, putative members should receive detailed information on plaintiff's claims to make an informed decision as to whether to opt-in and be bound by those arguments. That principle does not necessarily extend to defendants' arguments, as putative members are not bound by *those* arguments if they join the collective action. In any event, plaintiff's proposed language makes clear that defendants deny plaintiff's allegations, and that information should be sufficient for potential members to make an informed decision.

Fifth, defendants allege that the proposed notice improperly suggests that the court "endorses the merits of the action." Opp. 17, ECF 18. Defendants specifically make two points: (1) that the title of the notice, which contains the case, court's name, and case number, "read[s] like a pleading caption," and (2) that the "disclaimer about the [c]ourt's neutrality on the merits is buried in the sixth paragraph." *Id.* at 17-18. To be sure, the inclusion of the court's name, case name, and number at the top of the page helps distinguish a judicially-authorized notice from attorney advertising, and thus, the court finds that its use is proper. However, defendants' concern that the statement on the court's neutrality is "buried" in the sixth paragraph of the

notice is valid; plaintiff should either underline that disclaimer or move it up toward the top half of the page.

Sixth, defendants insist that contact information for their attorneys be provided alongside the contact information for plaintiff's attorneys at the bottom of the notice.  However, defendants' counsel plays no role "in managing the distribution of the notice or the gathering of consent forms."  *Cryer v. Intersolutions, Inc*., No. CIV.A. 06-2032 (EGS), 2007 WL 1053214, at *3–4 (D.D.C. Apr. 7, 2007).  Thus, the inclusion of additional attorneys "only creates the potential for confusion of those who receive the notice."  *Id.*  While defendants cite cases from the District of Arizona and the Central District of California that allowed for the contact information of defense counsel, approved notices in collective actions in this district have not necessarily required such information.  *See, e.g.*, *Chastain,* 2014 WL 3734368, at *8.  The court will follow this prior practice and not require that defense counsel's contact information be included on the notice.

### F.    Privacy of Putative Members

Lastly, to facilitate the notification of putative members, plaintiff requests defendants provide the names, last-known mailing address, all telephone numbers, email addresses, work locations, copies of driver's licenses, and dates of employment at Cabaret II, for all dancers "who have worked at Cabaret II within the past three years."  Proposed Order 1, ECF 17-4. Defendants suggest that, instead, a third-party claims administrator should send out the notices to protect the privacy rights of putative members and prevent any improper solicitation.  Opp. 19-20, ECF 18.  In response, plaintiff alleges that a third-party claims administrator is unnecessary, and that a protective order on disclosed personal information would accomplish defendants' goals without additional cost.  Reply 9-10, ECF 24.

While plaintiff characterizes defendants' argument in support of a third-party administrator as "tepid at best," courts have authorized the use of claims administrators in FLSA actions "to protect the privacy of collective members."  Reply 9, ECF 24; *Senne v. Kansas City Royals Baseball Corp*., No. 14-CV-00608-JCS, 2015 WL 6152476, at *18 (N.D. Cal. Oct. 20, 2015), *class later decertified*, *Senne v. Kansas City Royals Baseball Corp*., 315 F.R.D. 523, 591 (N.D. Cal. 2016); *see also Wren v. Rgis Inventory Specialists*, No. C-06-05778JCS, 2007 WL 4532218, at *9 (N.D. Cal. Dec. 19, 2007) (allowing information to only be provided to a third-party administrator "to protect the privacy of [] employees").  Moreover, plaintiff's assertion that it is "entirely appropriate for [her attorneys] to receive the information" because they "will represent collective members" is misguided, as they will only represent those who opt into the collective action—not necessarily every single performer who receives a notice.  Reply 9, ECF 24.  Thus, the court directs the parties to confer and mutually agree upon a third-party claims administrator; defendants will provide the personal information requested by plaintiff's counsel to that administrator.

//

//

//

//

//

//

//

//

//

## ORDER

For the reasons discussed ABOVE, the court GRANTS IN PART plaintiff's motion for conditional certification.  The court DENIES the implementation of plaintiff's proposed order (ECF 17-4) and use of the proposed notice (Ex. 1, ECF 17-3) and instead directs the parties to confer and finalize a notice and proposed order that is (1) in accordance with this opinion and (2) distributed by a mutually agreed-upon third-party claims administrator.[4]

IT IS SO ORDERED.

Dated April 29, 2022.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge

---

[4] As previously noted, the request for equitable tolling, which is non-dispositive, is addressed in a separate ruling.